# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. YOUNG, SR. and SANDRA E. YOUNG, | No. 4:18-CV-00403 |
| Plaintiffs, | (Judge Brann) |
| v. | |
| SCOTT TOWNSHIP, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

### SEPTEMBER 21, 2018

Defendants Briar Creek Township, South Centre Township, the Columbia Montour Snyder Union Counties of Central Pennsylvania Service System ("CMSU"), Jared Noss, Thomas Frace, William Richendrfer, Jeremy Moyer, and Megan Fetterman all moved to dismiss the complaint filed by Plaintiffs James and Sandra Young. Defendants Briar Creek, Thomas Frace, and Jared Noss also moved for a more definite statement of that complaint. For the reasons that follow, the motions to dismiss will be partially granted and partially denied, and the motion for a more definite statement will be denied.

# I. BACKGROUND

## A. The Incident[1]

On November 13, 2016, James and Sandra Young received a phone call from their son Jonathan, who was struggling with his schizophrenia.[2] The Youngs travelled to Jonathan's home, found him "agitated and hallucinating," and decided to telephone the CMSU for assistance.[3] Defendant Megan Fetterman, a CMSU employee, took that call and discussed the situation with James for approximately twenty minutes.[4]

At some point, Jonathan ordered his parents to leave his home, and the resulting clamor prompted a neighbor to dial 911.[5] Before law enforcement arrived, however, Jonathan barricaded himself in his home, "screwing and boarding the front door shut."[6]

Four officers from the Scott Township police department were the first responders to the 911 call.[7] Ms. Fetterman arrived shortly after they did, bringing

---

[1] When considering a motion to dismiss for failure to state a claim, a court assumes the truth of all factual allegations made in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The material in this section, then, is taken entirely from the Youngs' Complaint (ECF No. 1) and is presumed true for present purposes.

[2] Complaint ¶ 35.

[3] *Id.* ¶¶ 35-37.

[4] *Id.* ¶ 38.

[5] *Id.* ¶¶ 39-40.

[6] *Id.* ¶ 41.

[7] *Id.* ¶ 42.

a warrant authorizing Jonathan's involuntary commitment under state law.[8] Defendants Jeremy Moyer and Jared Noss arrived last.[9] James and Sandra told the responding defendants that Jonathan was barricaded alone in the home without any firearms, and that they believed Jonathan did not "appear" to be a danger.[10] For one hour, the defendants attempted to talk Jonathan out of the home, to no avail; as a result, they used a battering ram to gain entry.[11]

Once inside the home, one of the defendants shot Jonathan, prompting him to retreat into his bedroom.[12] That room had two entrances, so the defendants congregated at one of them, forcing Jonathan out the other.[13] When he emerged, he was shot again, this time in the abdomen, by a Scott Township police officer.[14] Jonathan died from this wound three days later.[15]

---

[8] *Id.* ¶ 43.

The warrant was obtained under 50 P.S. §§ 7301-7302, which authorizes the emergency examination and treatment of individuals who are "severely mentally ill and need of immediate treatment."

[9] Complaint ¶¶ 24-25, 44.

[10] *Id.* ¶ 46-48.

[11] *Id.* ¶¶ 49-50.

[12] *Id.* ¶ 55.

[13] *Id.* ¶¶ 56-58.

[14] *Id.* ¶ 58.

[15] *Id.* ¶ 59.

### B. Procedural History

On February 16, 2018, James and Sandra initiated the above-captioned case by filing a seven-count complaint. Among the complaint's claims are several claims under the Fourth Amendment,[16] claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"),[17] and claims for negligent infliction of emotional distress ("NIED").[18] The Fourth Amendment claims, the ADA claims, and the RA claims are brought by James and Sandra as administrators of Jonathan's estate. The NIED claim is brought by Plaintiffs in their individual capacities.

The Fourth Amendment claims assert that the officers' actions in executing the warrant on November 13, 2016 constituted a constitutionally unreasonable seizure, and are brought against Scott Township, its Chief of Police Raymond Klinger, and several of its officers including Officer Noss;[19] against Briar Creek Township and its Chief of Police Thomas Frace; against South Centre Township,

---

[16] Counts I, III, IV, and V.

[17] Count II.

[18] Count VIII. The complaint also contains tort claims (Counts VI and VII) against the Scott Township police officer who shot Jonathan in the abdomen. That officer has not moved to dismiss James and Sandra's complaint, so these claims (and that defendant) will not be discussed further in this opinion.

[19] The complaint identified Officer Noss as belonging to the Scott Township police department, Complaint ¶ 25, but he is being represented by the same counsel as Briar Creek Township and Chief Frace, and joins in those parties' motion to dismiss. It is possible that Officer Noss in fact belongs to the Briar Creek Township police department, but that issue is irrelevant for the purposes of the instant motion.

its Chief of Police William Richendrfer, and Officer Moyer; and against the CMSU, its chief policymaker (identified as "John Doe"), and Ms. Fetterman. The ADA and RA claims—brought against the three townships and the CMSU—assert that the executing officers' actions failed to accommodate Jonathan's disability (*i.e.*, his schizophrenia). The NIED claims—brought against several Scott Township police officers, Officer Noss, Officer Moyer, and Ms. Fetterman—assert that the officers' actions caused James and Sandra to suffer physically-manifesting emotional distress.

In April 2018, separate motions to dismiss were filed by South Centre Township, Chief Richendrfer, and Officer Moyer;[20] by the CMSU and Ms. Fetterman;[21] and by Briar Creek Township, Chief Frace, and Officer Noss.[22] Briar Creek Township, Chief Frace, and Officer Noss also moved for a more definition statement of the Youngs' complaint.[23]

---

[20] ECF No. 24.

[21] ECF No. 25.

[22] ECF No. 26.

[23] ECF No. 27.

## II. DISCUSSION

### A. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[24] a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party.[25] The court does not, however, assume the truth of any of the complaint's legal conclusions.[26] If a complaint's factual allegations state a claim that is plausible—*i.e.*, if they allow the court to infer the defendant's liability—the motion is denied. If not, the motion is granted.[27]

### B. Whether Chief Richendrfer, Officer Moyer, and Ms. Fetterman Are Entitled to Qualified Immunity

Chief Richendrfer, Officer Moyer, and Ms. Fetterman argue that they are entitled to qualified immunity against the Youngs' claims.

Government officials are immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[28] When determining whether the unlawfulness of an act was "clear" at the time of its commission, however, it is

---

[24] Federal Rule of Civil Procedure 12(b)(6).

[25] *Phillips v. County Of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[27] *Id.*

[28] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

important to "frame the [allegedly violated] right . . . in light of the specific context of the case, not as a broad general proposition."[29] In other words, a plaintiff cannot defeat an defendant-official's qualified immunity by, for example, arguing that unreasonable seizures "clearly" violate the Fourth Amendment.

The Youngs' Fourth Amendment claims are based on the argument that Defendants used excessive force when executing the involuntary commitment warrant against Jonathan. As the United States Supreme Court has demonstrated, the resolution of such claims requires a fact-intensive analysis, with consideration given to, *inter alia*, whether the arrestee "is actively resisting arrest or attempting to evade arrest by flight," whether he "poses an immediate threat to the safety of the officers or others,"[30] and whether the arrestee should be assigned some level of culpability.[31] These factors, furthermore, are to be viewed from the standpoint of an objectively "reasonable officer on the scene, . . . without regard to [the officer's] underlying intent or motivation."[32]

The complaint's allegations do not allow this Court to define the allegedly violated right in a specific enough manner to determine whether the right was

---

[29] *Kedra v. Schroeter*, 876 F.3d 424, 449 (3d Cir. 2017).

[30] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[31] *Scott v. Harris*, 550 U.S. 372, 384 (2007); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) ("the question [is] whether the totality of the circumstances justifie[s] a particular sort of search or seizure"); *Scott*, 550 U.S. at 383 (2007) ("we must . . . slosh our way through the factbound morass of 'reasonableness'").

[32] *Graham*, 490 U.S. at 397.

"clearly established" at the time of the events underlying this case. From the pleadings alone, it is unclear what facts and circumstances were apparent to someone in the Defendants' shoes at the time of the shooting. It is admitted that Jonathan was resisting arrest and attempting to flee—but was he creating a risk of danger? And what portion of culpability, if any, should be assigned to Jonathan in light of his mental illness? Were Defendants "forced to make [a] split-second judgment" in a "tense, uncertain, and rapidly evolving" situation?[33]

Discovery may reveal the answers to these questions. If and when it does, this Court will be able to determine, first, whether Defendants in fact violated Jonathan's constitutional rights, and second, whether that violation was clear to Defendants at the time it was committed. At this stage, however, Chief Richendrfer, Officer Moyer, and Ms. Fetterman's request for qualified immunity must be denied. Those defendants may nevertheless raise this issue again at the summary judgment stage.

### C. Whether the Youngs Have Stated § 1983 Claims Against South Centre Township, Briar Creek Township, the CMSU and Chief Frace

South Centre Township, Briar Creek Township, the CMSU, and Chief Frace argue that the Youngs have failed to state a constitutional claim against them.

---

[33] *Graham*, 490 U.S. at 397.

There are limited situations in which municipal entities and their chief policymakers may be held liable under 42 U.S.C. § 1983. One such situation is where a plaintiff shows that those types of defendants have insufficiently trained their employees such that there is a demonstrated "deliberate indifference to the rights of person with whom [the employees] come into contact."[34] Although these "deliberate indifference" claims generally require proof of a preexisting pattern of violations, they may also be proven, "in a narrow range of circumstances," by showing that showing that the violation at issue was a "highly predictable consequence" of a lack of training.[35]

In their complaint, the Youngs specifically allege that South Centre Township, Briar Creek Township, the CMSU, and Chief Frace have "failed to send their subordinate defendants"—*i.e.*, their employees—"for training relating to the . . . proper use of firearms and tasers" and that this failure "directly caused [Jonathan's] harm."[36] Although the Youngs have not alleged a preexisting pattern of Fourth Amendment violations by any defendant, the Supreme Court has noted that "the need to train officers in the constitutional limitations on the use of deadly force" is sufficiently obvious to satisfy the knowledge element of a deliberate

---

[34] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

[35] *Berg v. Allegheny County*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 409-10 (1997)).

[36] Complaint ¶¶ 69, 71.

indifference claim.[37] Therefore, the Youngs have adequately stated § 1983 claims against the municipal defendants.

### C. Whether the Youngs Have Stated an Americans with Disabilities Act Claim Against South Centre Township and the CMSU

South Centre Township and the CMSU argue that the Youngs have failed to state an ADA claim against them.

A plaintiff may state a claim under the ADA by alleging that a defendant has failed to provide its employees certain training despite knowing of the "substantial[] likel[ihood]" that such failure will result in a violation of the ADA—*i.e.*, a plaintiff may state an ADA claim in essentially the same manner as a "deliberate indifference" claim against a municipal defendant.[38]

Here, the Youngs specifically allege that South Centre Township and the CMSU have failed to properly train their employees in "dealing with mentally ill individuals," including "the use of force on [such] individuals." Although the Youngs have not specifically alleged that the risk associated with that failure was known to those defendants because of a pattern of previous ADA violations, it seems at least plausible that "the risk of an ADA violation in such circumstances

---

[37] *Harris*, 489 U.S. at 390 n.10.
[38] *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).

[was] patently obvious."[39]  Therefore, the Youngs have adequately stated ADA claims against South Centre Township and the CMSU.

> **D. Whether the Youngs Have Adequately Stated a Rehabilitation Act Claim Against South Centre Township and the CMSU**

South Centre Township and the CMSU argue that the Youngs have failed to state RA claims against them because the Youngs have not alleged that those organizational defendants receive federal funds.

The RA "limits its coverage to [organizational defendants] that receive[] federal financial assistance."[40]  The Youngs' complaint does not allege that either South Centre Township or the CMSU receive such assistance.  Therefore, this Court will dismiss the RA claims against those defendants.  The Youngs, however, are free to amend their complaint to correct this deficiency, if possible.

> **E. Whether the Official Capacity Claims Should be Dismissed Because They Are Duplicative**

Chief Richendrfer, Officer Moyer, and Ms. Fetterman argue that all claims against them in their official capacities should be dismissed because those claims are duplicative of the claims against their employers.  The Youngs agree.  Therefore, these claims will be dismissed with prejudice.

---

[39] *Id.* at 182; *see Harris*, 489 U.S. at 390 n.10.

[40] *U.S. Dept. of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 604 (1986).

### F. Whether the Claims for Negligent Infliction of Emotional Distress Should be Dismissed

Officer Noss and Ms. Fetterman argue that the NIED claims against them are barred by the Pennsylvania Political Subdivision Tort Claims Act.[41] The Youngs agree. Therefore, these claims will be dismissed with prejudice.

### G. Whether Briar Creek Township, Chief Frace, and Officer Noss Are Entitled to a More Definite Statement of the Youngs' Complaint

Briar Creek Township, Chief Frace, and Officer Noss ask this Court to order the Youngs to amend their complaint to provide more particularity about the alleged events of November 13, 2016. Federal Rule of Civil Procedure 12(e), however, notes that such motions are proper only when a complaint is "so vague or ambiguous that [a defendant] cannot reasonably prepare a response."[42]

It is obvious here that the Youngs are seeking to hold Defendants liable for acts undertaken on a particular day at a particular time and a particular place. As the Youngs assert, any more specificity on their end is impossible without the benefit of discovery. Therefore, this Rule 12(e) motion will be denied.

---

[41] 42 Pa. C.S. §§ 8541 *et seq.*

[42] *See also Zoller v. Smith, Levin & Harris*, 1 F.R.D. 182, 183 (M.D. Pa. 1940) ("a motion under Rule 12(e) should be granted only where the complaint is stated in such general terms that the defendant can not understand the general nature of the charges made so as generally to prepare for trial").

## III. CONCLUSION

For the reasons discussed above, the RA claims against South Centre Township and the CMSU will be dismissed without prejudice. All claims against Chief Richendrfer, Officer Moyer, and Ms. Fetterman in those defendants' official capacities, and the NIED claims against Officer Noss and Ms. Fetterman, will be dismissed with prejudice. And finally, Briar Creek Township, Chief Frace, and Officer Noss's Motion for a More Definite Statement will be denied. An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge