# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. YOUNG, SR., individually and as administrator of the ESTATE OF JONATHAN M. YOUNG, SANDRA E. YOUNG, individually and as administrator of the ESTATE OF JONATHAN M. YOUNG,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT TOWNSHIP, COLUMBIA MONTOUR SNYDER UNION COUNTIES OF CENTRAL PENNSYLVANIA SERVICE SYSTEM, RAYMOND KLINGLER, JOE GRASSLEY, VINCENT FIGUERIDO, PAUL KELLY, MEGAN FETTERMAN, and JOHN/JANE DOES I-X,<br><br>Defendants. | No. 4:18-CV-00403<br><br>(Judge Brann) |

## MEMORANDUM OPINION

### NOVEMBER 20, 2019

Plaintiffs James and Sandra Young moved to amend their complaint. The Youngs seek to add a count of "state-created danger" against the police officers that, in serving an involuntary commitment warrant, entered their son Jonathan's

home and shot him.[1]  Defendants Scott Township, Raymond Klingler, Joseph Grassley, Vincent Figueiredo, and Paul Kelly oppose the motion.[2]

For the reasons that follow, the Youngs' motion to amend will be denied.

I.     **BACKGROUND**[3]

On the morning of November 13, 2016, Scott Township police officers Raymond Klingler, Joseph Grassley, Vincent Figueiredo, and Paul Kelly responded to a 911 call.[4]  The call was precipitated by Jonathan Young's struggling with his schizophrenia.  Jonathan was "agitated and hallucinating."[5]  He had "locked himself in his home, screwing and boarding the front door shut."[6]

Megan Fetterman, a CMSU employee who had spoken with James Young about the situation, arrived shortly after the four officers.[7]  She brought with her a warrant authorizing Jonathan's involuntary commitment under state law.[8]

---

[1]    ECF No. 57.

[2]    ECF Nos. 58 and 62.  The Youngs did not submit a reply brief.

[3]    When considering a motion to dismiss for failure to state a claim, a court assumes the truth of all factual allegations made in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The material in this section, then, is taken entirely from the Youngs' Amended Complaint (ECF No. 57-1) and is presumed true for present purposes.

This factual background supplements the background I provided in my September 21, 2018 Memorandum Opinion, available at ECF No. 45.

[4]    Amended Complaint ¶¶ 40-42.

[5]    *Id.* ¶¶ 35-36.

[6]    *Id.* ¶ 41.

[7]    *Id.* ¶¶ 37-38, 43.

[8]    *Id.* ¶ 43.

James and Sandra told the responding defendants that Jonathan was barricaded alone in his home without any firearms, and that they believed Jonathan did not "appear" to be a danger.[9] They also told the responding defendants that Jonathan could not sporadically leave.[10] For one hour, the defendants attempted to talk Jonathan out of the home, to no avail; as a result, they used a battering ram to gain entry.[11]

After battering down the door, the defendants entered Jonathan's home with their guns drawn.[12] Once inside the home, one of the defendants shot Jonathan, prompting him to retreat into his bedroom.[13] James Young had informed the defendants that Jonathan's bedroom had two entrances.[14] The defendants congregated at one of the entrances, forcing Jonathan out the other.[15] When Jonathan emerged from the other entrance, he was shot again, this time in the

---

The warrant was obtained under 50 P.S. §§ 7301-7302, which authorizes the emergency examination and treatment of individuals who are "severely mentally ill and in need of immediate treatment."

[9] Amended Complaint ¶¶ 46-48.
[10] Id. ¶ 48.
[11] Id. ¶¶ 49-50.
[12] Id. ¶ 54.
[13] Id. ¶ 55.
[14] Id. ¶ 57.
[15] Id. ¶¶ 56-58.

abdomen, by defendant Grassley.[16] Jonathan died from this wound three days later.[17]

## II. DISCUSSION

### A. Standards of Review

#### 1. Motions to Amend

"The court should freely give leave" for a party to amend their complaint "when justice so requires." Federal Rule of Civil Procedure 15(a)(2). The United States Court of Appeals for the Third Circuit, interpreting a prior directive from the United States Supreme Court, has held that "prejudice to the non-moving party is the touchstone for the denial of an amendment. In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (internal citations and quotations omitted); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Futility" means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule

---

[16] *Id.* ¶ 58.

[17] *Id.* ¶ 59.

12(b)(6)." *Id.* (citation omitted).[18] "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

### 2. Excessive Force Claims and Substantive Due Process

A plaintiff cannot maintain a "pure" excessive force claim under a theory that the defendant officers have violated their substantive due process rights. These kinds of claims must proceed under the Fourth Amendment. *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) ("[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.").

But in "cases in which the police used both force and created a danger that harmed the individual,"[19] the Third Circuit has allowed plaintiffs to seek substantive due process via the "state created danger" doctrine. *See Smith v. Marasco*, 318 F.3d 497, 506-11 (3d Cir. 2003) (applying doctrine when disturbed man suffered fatal heart attack due to overwhelming police response—including a SWAT team and helicopter—to a neighbor's complaint); *Neuberger v. Thompson*, No. 04-1690, 2005 WL 19275, at *4 n.1 (3d Cir. Jan. 5, 2005) (applying doctrine when armed troopers rushed distraught woman alone on a jetty and grasping a

---

[18] *See* my September 21, 2018 Memorandum Opinion (at 6) for review of the 12(b)(6) standard.

[19] *Wheeler v. City of Philadelphia*, 367 F. Supp. 2d 737, 746 (E.D. Pa. 2005)

handgun, despite her pleas to stay away, inducing her to aim at a trooper and draw fatal fire).

### 3. "State Created Danger" Claims

"Liability under the state-created danger theory is predicated upon the [state's] affirmative acts which work to plaintiffs' detriments in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992). Under this doctrine, "the state may assume responsibility for the safety of an individual for whom it affirmatively creates or enhances a risk of danger." The elements are as follows.

1) "the harm ultimately caused was foreseeable and fairly direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

*Kaucher v. Cty. of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006)

### 4. Standard Required to "Shock the Conscience"

"Shocking the conscience" is a very high standard that requires state action to be "ill-conceived or malicious."[20] If a police officer is acting within a time frame that allows the officer to engage in "hurried deliberation," actions that "reveal a conscious disregard of a great risk of serious harm" will suffice to shock the conscience. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847-49 & n.8 (1998). The Third Circuit has also phrased "conscious disregard" as "gross negligence or arbitrariness that indeed shocks the conscience." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 241 (3d Cir. 2008) "Hurried deliberation" includes a situation where an officer is required to act "in a matter of hours or minutes." *Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir. 2006). Further, the existence of "competing obligations" that a police officer needs to consider increases the degree of culpability required for an action to shock the conscience. *Lewis*, 523 U.S. at 852. "[M]ore culpability is required to shock the conscience to the extent that state actors are required to act promptly and under pressure. Moreover, the same is true to the extent the responsibilities of the state actors require a judgment between competing, legitimate interests." *Schieber v. City of Philadelphia*, 320 F.3d 409, 419 (3d Cir. 2003).

---

[20] *Johnson v. City of Philadelphia*, 397 F. Supp. 3d 692, 703 (E.D. Pa. 2019) (quotations and citations omitted).

B.  Analysis

The Youngs argue that "[t]here are two separate wrongs here – the entry in to the residence and the shooting. The shooting relates to the excessive force claim. The entry into the home with guns drawn and the knowledge of Decedent's history is the state created danger."[21]  I find that this entry did not shock the conscience, and therefore did not constitute a state created danger.

The Youngs did tell the officers that Jonathan did not possess firearms and did not appear to be a danger to others.  But the officers understood that Jonathan had a history of schizophrenia and was agitated and hallucinating.  As a result, the state had procured a warrant that authorized Jonathan's involuntary commitment. The officers were charged with executing this warrant.  They tried to talk Jonathan out of the home for an hour.  Jonathan had locked himself inside, screwing and boarding the front door shut.  This was a situation of "hurried deliberation"—it did not rise to the level of a police pursuit, for example, but, given Jonathan's condition, the officers needed to act "in a matter of hours or minutes."

Given these circumstances, I cannot find that the officers' conduct— breaching Jonathan's home with a battering ram and entering the premises with weapons drawn—rose to the level of "conscious disregard of a great risk of serious harm," "gross negligence" or "arbitrariness" that shocks the conscience.  The officers had tried for an hour to get Jonathan out of the house and execute the

---

[21]  ECF No. 60 ("Brief in Support") at 5.

warrant. They understood the risk and urgency of the situation. And they spoke to the Youngs beforehand. In entering Jonathan's home, the officers "had two serious competing obligations: [Jonathan's] safety and their own." *Matican v. City of New York*, 524 F.3d 151, 159 (2d Cir. 2008). This Court is "loath to dictate to the police how best to protect themselves and the public, especially when our ruling could be taken to require officers to use riskier methods than their professional judgment demands." *Walter v. Pike Cty., Pa.*, 544 F.3d 182, 194 (3d Cir. 2008) (quoting *Matican*, 524 F.3d at 159). Though, in retrospect, the officers' choice to enter with weapons drawn "may well have been negligent and conceivably reckless" it "cannot be characterized as constitutionally conscience shocking." The officers' conduct here did not shock the conscience.[22]

---

[22] *Leddy v. Twp. of Lower Merion,* 114 F. Supp. 2d 372, 376 (E.D. Pa. 2000) (analyzing police officer's "high rate of speed on a crowded roadway" when responding to a non-emergency call); *see Walter v. Pike Cty., Pa.*, 544 F.3d 182, 194 (3d Cir. 2008).

The Third Circuit dealt with different facts in *Smith v. Marasco*. In that case, state police "activated" their "Special Emergency Response Team." The "SERT," at least 30 in number, employed riot gear, camouflage, various firearms, sharpshooters, and a helicopter. SERT rejected offers from others to attempt to communicate with the victim; they also prevented a neighbor from searching for the victim. They chose not to use a mediator or psychologist. And they cleared the victim's house and backyard shed using rocks, tear gas, and flashbangs. 318 F.3d 497, 502-04 (3d Cir. 2003). The Third Circuit called the SERT's work an "overwhelming show of force." *Id.* at 517.

## III. CONCLUSION

For the reasons discussed above, the Youngs' motion to amend their complaint will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge